**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Revised 07/07 WDNY

MAR 1 7 2016

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

*Monica Stepney*

**Jury Trial Demanded: Yes** ✓ **No** ___

_____
Name(s) of Plaintiff or Plaintiffs

-vs-

*RHA*
*Jackie Milne, Nicole Allen*
*Sandy Whitney, DonSturgis*
_____
Name of Defendant or Defendants

**DISCRIMINATION COMPLAINT**

16  -CV-  6173  G

You should attach a copy of your **original Equal Employment Opportunity Commission
(EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision, AND**
a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do
so may delay your case.

***Note:*** *Only those grounds raised in the charge filed with the Equal Employment Opportunity
Commission can be considered by the federal district court under the federal
employment discrimination statutes.*

This action is brought for discrimination in employment pursuant to *(check only those that
apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17
(amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race,
color, gender, religion, national origin).
> **NOTE**: In order to bring suit in federal district court under Title
> VII, you **must first obtain a right to sue letter** from the Equal
> Employment Opportunity Commission.

___ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634
(amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of
1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
> **NOTE**: In order to bring suit in federal district court under the Age
> Discrimination in Employment Act, you **must first file charges** with the
> Equal Employment Opportunity Commission.

___ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117
(amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
> **NOTE**: In order to bring suit in federal district court under the Americans
> with Disabilities Act, you **must first obtain a right to sue letter** from the
> Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the
aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be
appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of
1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

_____     New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1.  My address is: _25 Tynedale Way N. Chili, NY 14514_

    My telephone number is: _585-284-5352_

2.  The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

    Name: _Rochester Housing Authority_

    Number of employees: _Approx 200-225_

    Address: _1025 W. Main St_
    _Rochester, NY 14611_

3.  (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

    Name: _____

    Address: _____
    _____
    _____

## CLAIMS

4.  I was first employed by the defendant on (date): _May 22, 2006_

5.  As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
    *2008 to present, more recent 2011, 12, 13, 14 & 2015*

6.  As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any did): *2013 (Approx)* _____
    *Ongoing* _____
    _____

7.  I believe that the defendant(s)

    a. *☒*     Are still committing these acts against me.
    b. _____   Are not still committing these acts against me.
    (Complete this next item **only** if you checked "b" above)   The last discriminatory act against me occurred on (date) _____
    _____

8.  (Complete this section **only** if you filed a complaint with the New York State Division of Human Rights)

    The date when I filed a complaint with the New York State Division of Human Rights is

    _____
    _ (estimate the date, if necessary)

    I filed that complaint in (identify the city and state): _____
    _____

    The Complaint Number was: _____

9.  The New York State Human Rights Commission did _____ /did not _____
    issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged discriminatory conduct is: _____

11. The Equal Employment Opportunity Commission *did ✗* _____ /did not _____ issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to Sue letter which I received on: _____. (**NOTE:** If it

3

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13.   I am complaining in this action of the following types of actions by the defendants:

a. _____   Failure to provide me with reasonable accommodations to the application process

b. _____   Failure to employ me

c. _____   Termination of my employment

d. _____   Failure to promote me

e. _____   Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

f. ✕   Harassment on the basis of my sex

g. ✕   Harassment on the basis of unequal terms and conditions of my employment

*Especially*   h. ✕   Retaliation because I complained about discrimination or harassment directed toward me

i. ✕   Retaliation because I complained about discrimination or harassment directed toward others

j. ✕   Other actions (please describe) Intimidation, Racism Systemic + blatant racism, Hostile Work Environment, unfair imployment practices, bullying, threats

14.   Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

a. ✕ Race                              f. _____ Sexual Harassment

b. _____ Color                       g. _____ Age
                                       _____ Date of birth
c. ✕ Sex
                                       h. _____ Disability
d. _____ Religion                    Are you incorrectly perceived as being
                                       disabled by your employer?
e. _____ National Origin             _____ yes _____ no

15.   I believe that I (was) ✕ /was not _____ **intentionally** discriminated against by the defendant(s).

16.    I believe that the defendant(s) is/are ⟨are⟩ ✗ is not/are not _____ still committing these acts
       against me. (If you answer is that the acts are not still being committed, state when:
       _____ and why the defendant(s) stopped committing these acts against
       you: _____
       _____

17.    **A copy of the charge to the Equal Employment Opportunity Commission is attached
       to this complaint and is submitted as a brief statement of the facts of my claim.**
       (**NOTE**: You **must** attach a copy of the **original complaint** you filed with the Equal
       Employment Opportunity Commission and a copy of the **Equal Employment
       Opportunity Commission affidavit** to this complaint; failure to do so will delay
       initiation of your case.)

18.    The Equal Employment Opportunity Commission *(check one)*:
       _____ **has not** issued a Right to sue letter
       ✗ **has** issued a Right to sue letter, which I received on *12-26 or 12-28-15*

19.    State here as briefly as possible the *facts* of your case. Describe how each defendant is
       involved, including *dates* and *places*. Do not give any legal arguments or cite any cases
       or statutes. If you intend to allege a number of related claims, number and set forth each
       claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if
       necessary.)*

       The Defendants listed all worked) in
       conjunction together for the common + sole
       purpose to "go after" myself + others that
       they are biased against due to race, etc.
       All scenarios overlap because of this +
       how they collectively agree to target people
       I will label + number the emails provided
       (more to come) to show the patterns I am
       speaking of
                                                    ⟶
       They are only in subject order

## FOR LITIGANTS ALLEGING **AGE DISCRIMINATION**

20.    Since filing my charge of age discrimination with the Equal Employment Opportunity
       Commission regarding defendant's alleged discriminatory conduct
       _____ 60 days or more have elapsed _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN **AMERICANS WITH DISABILITIES ACT CLAIM**

21.    I first disclosed my disability to my employer (or my employer first became aware of my
       disability on _____

22.   The date on which I first asked my employer for reasonable accommodation of my
      disability is _____

_____

23.   The reasonable accommodations for my disability (if any) that my employer provided to
      me are: _____

      _____

      _____

___

24.   The reasonable accommodation provided to me by my employer were _____/were not
      _____ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate,
including injunctive orders, damages, costs and attorney's fees.

Dated: 3-14-16        4 Morica Stepney

                                          Plaintiff's Signature

*AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

_____Western_____ DISTRICT OF _____New York_____

Monica Stepney

### EXHIBIT AND WITNESS LIST

V.

RHA

Case Number:

| PRESIDING JUDGE | | | | | PLAINTIFF'S ATTORNEY FOR Pro-Se ( now) | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|---|---|
| TRIAL DATE (S) | | | | | COURT REPORTER | COURTROOM DEPUTY |
| PLF NO | DEF NO | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES | |

| PLF NO | DEF NO | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| | | | | | D2C letter "Letter alleges bias in Rien so certain - Written by David R ley |
| 1 | a | | | | Chain of Command letter |
| 2 | | | | | Org Charts - most Recent on top |
| 3 | | | | | email "yesterdays meeting" |
| | a | | | | "  " disturbing news |
| | b | | | | "  " heads up" |
| | c | | | | "  " Private - Meeting " |
| 4 | | | | | emails from Adam McFadden |
| 5 | | | | | Investigative Consultant + Report |
| 6 | | | | | Witness List - Retaliated against, Harassed Discriminated, Intimidated |
| 7 | | | | | email examples of tone/hostility/sarcasm |
| 7 cont | | | | | of how mgmt strives to not teach blacks |
| 8 | | | | | Lies / P. Gomery |
| 9 | | | | | Retaliation - "PBA Trans Exp" |
| 10 | | | | | Harassment - "Break " Pages |
| 11 | | | | | Discrimination/Retaliation/FFC moves |
| 12 | | | | | Retaliation - writeup/ |
| 13 | | | | | Disparate treatment - N. Johnson |
| | a | | | | O.T. issue |
| 14 | | | | | Unfiled (out of time) Reverse Discrimination EEOC Claim |
| | a | | | | Sexism - How men are allowed to treat women (emails) |
| 15 | | | | | coworker (associated in time) Harassment |
| 16 | | | | | Whistleblower Policy |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

John E. Thompson, Jr.
Director

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-3035
FAX (716) 551-4387
TTY (716) 551-5923

Monica Marie Stepney
25 Tynedale Way
North Chili, NY 14514

Re:     Monica Stepney v. Rochester Housing Authority
        Charge No. 525-2015-00616

Dear Ms. Stepney :

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the information and evidence submitted. The Commission makes a determination by looking at the evidence and weighing it against the differing explanations given by the two parties. As you can imagine, it seldom comes down to one fact or one piece of evidence determining whether there is a violation of the law.

Hostile Work Environment - You have a good initial case for hostile work environment. You were out of work for stress related illness in the recent past. Some of your general claims of harassment are convincing but when we look at the specifics it's hard to see them as severe or pervasive and it's hard to identify race as a basis of the harassment. As Respondent says in its position statement, there are no overtly racial acts or words. Some or your internal complaints during the relevant time mention harassment but do not mention race based harassment. Some of the complaints of discrimination seem frivolous. You claim that Respondent sponsors retirement and good bye parties for white employees but not African American employees. At the fact finding conference Respondent asserted, and you could not deny that the parties were initiated by the employees, not the management. Respondent also pointed out, and you did not dispute that you had Respondent's permission to hold a party for an African American employee who was leaving. Her white supervisors contributed to the party fund.

It was also revealed in documents that you had asked to be supervised by a person that you later claimed to be racially biased. With regard to your allegation that you got a written warning while others were allowed to explain before the decision was made to give them a written warning: 1) you could not say for certain what the races were of the people more favorably

525-2015-00616
Letter to Monica Stepney
Page -2-

treated; 2) Respondent said that there were some employees who were given an opportunity to explain before a decision on discipline was made because, in their cases it was a cloudy issue whether or not they had actually violated policy. In your case it was clear.

Harassment / retaliation - Your protected protests are weak. Your association with a gay employee who protested disparate treatment was in 2006. Your current managers claim they did not know about any protest or even that the co-worker (Phil Walker) was gay. Respondent said at the fact finding conference that they were only aware of one protest of race discrimination to the Board and did not make any connection between that and you.

Pattern or practice – To establish a pattern or practice case you need statistics supporting the claim and you need several examples of intentional discrimination. You cannot even use yourself as an instance because we cannot find racial discrimination in your case. As for other examples, we have the examples of two other employees who were allegedly denied promotion to one Housing Manager III vacancy because of their race and sex. However the same decision makers filled the previous Housing Manager III vacancy with an African American female.

Based upon this analysis the Commission is unable to conclude that the information establishes a violation of federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge with 90 days of receipt of said notice. Otherwise, your right to sue will be lost. Please contact David Ging at (716) 551-3035 if you have any questions.

Date: **DEC 2 1 2015**

Sincerely,

John E. Thompson, Jr.
Director

Encl: Dismissal and Notice of Right to Sue

EEOC Form 161 (2/08)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   **Monica Marie Stepney**
      **25 Tynedale Way**
      **North Chili NY  14514**

From:   **Buffalo Local Office**
        **6 Fountain Plaza**
        **Suite 350**
        **Buffalo, NY 14202**

|  | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **525-2015-00616** | David Ging,<br>**Investigator** | **(716) 551-3035** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

**John E. Thompson, Jr.**
**Director**

**DEC 2 1 2015**
*(Date Mailed)*

Enclosures(s)

cc:   **Clemente J. Parente, Esq.**
      **Jackson Lewis**
      **18 Corporate Woods Blvd., 3rd Floor**
      **Albany, NY  12211**

**Rochester Housing Authority**

Enclosure with EEOC
Form 161 (2/08)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE*

## DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a pro se complaint. Every district court has either a clerk or staff attorney who can assist you in filing pro se. To find out how to file a pro se complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file pro se, you must file your suit in the appropriate court within 90 days of receiving this mailing.

## WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists pro se complainants for specific instructions on how to seek counsel. The appointment of counsel in any pro se complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $250.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists pro se complainants for information concerning the necessary procedure to request that the filing fee be waived.

## HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(800) 285-2221 http://www.abanet.org

New York State Bar Association
(800) 342-3661 http://www.nysba.org

National Employment Lawyers Association Referral Service
(212) 819-9450 http://www.nela.org

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

## HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.

# DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a pro se complaint. Every district court has either a clerk or staff attorney who can assist you in filing pro se. To find out how to file a pro se complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file pro se, you must file your suit in the appropriate court within 90 days of receiving this mailing.

# WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists pro se complainants for specific instructions on how to seek counsel. The appointment of counsel in any pro se complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $250.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists pro se complainants for information concerning the necessary procedure to request that the filing fee be waived.

# HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(800) 235-2221 http://www.abanet.org

New York State Bar Association
(800) 342-3661 http://www.nysba.org

National Employment Lawyers Association Referral Service
(212) 819-9450 http://www.nelaorg

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

# HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days afterr you file suit. If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.

Monica Stepney    Exhibit - 1

**From:**        Shawn Burr
**Sent:**        Tuesday, April 14, 2015 2:51 PM
**To:**          RHASTAFF
**Subject:**     Chain of Command

Dear RHA Staff,

It has come to my attention that employees are contacting the RHA Board of Commissioners and Board Chair about issues at RHA. I would like to remind everyone about the chain of command and how it works. Chain of command describes the way in which organizations traditionally structure their reporting relationships. The chain of command encourages employees to have a closer relationship with their supervisor and enact change through a single system. Without the chain of command, the workplace can quickly get overwhelmed with complaints and calls for change without a unified way of addressing them. Discussing concerns with your supervisor creates a relationship of trust and respect while getting things done. Breaking the chain of command shows a lack of respect for authority. Employees should go to their immediate supervisor with all work related issues or needs. The supervisor should address employee issues promptly or recommend a "next course of action" and assist the employee to reach a solution. If the immediate supervisor does not address the employee concern promptly or adequately, or if the issue involves the supervisor's behavior or actions then and only then should the employee take it to their department director or HR. If the employee's concern is not resolved by HR or the department director, then the employee should go to the Executive Director or Interim Executive Director. Employees should always feel comfortable going to HR to discuss their concerns. If HR is not addressing your concern, then please see the Executive Director or Interim Executive Director. If your concern happens to involve the Executive Director then a process will be established where you can confidentially contact RHA's General Counsel rather than involving the Board or Board Chairperson. General Counsel and the Board will see to it that these particular concerns are investigated and addressed in the appropriate manner.

I know there is some unrest amongst staff and I would like all staff to know that we are procuring a third party to come in, meet with employees to fully explore all issues and concerns and make recommendations to the Board. The Board and its General Counsel are endeavoring to expedite this process, but also to make sure that this investigation is done thoroughly and properly. In the meantime, please remember to follow the chain of command. My door is always open and I'd like to thank all of you who have stopped by to "chat".

Sincerely,
Shawn

**Shawn Burr**
Interim Executive Director
Rochester Housing Authority
675 West Main Street
Rochester, NY 14611
Office: (585)697-6184
Fax: (585)362-8684
sburr@rochesterhousing.org

Confidentiality Note:  This e-mail and any attachments included herewith are intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or its attachments by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please notify us immediately by phone at (585) 697-6184 or e-mail at sburr@rochesterhousing.org and destroy the original message and all copies.

Monica Stepney  *Exhibit 3*

**From:** Monica Stepney
**Sent:** Monday, November 16, 2015 11:15 AM
**To:** *Investigator* 'david.ging@eeoc.gov'
**Subject:** FW: yesterday's meeting

*Shanna - my direct mgr*
*Cranmer*

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

*Nikki - HSG mgr - another Dept +*
*Allen*

*Sandy*
*Whitney —*
*Dir of Pub HSG*
*+ temp Interim Leasing Ops Director (section 8)*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended
recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Monica Stepney
**Sent:** Wednesday, October 28, 2015 4:37 PM
**To:** Lisa Tarantello *- union steward*
**Cc:** Shanna Cranmer; Jacquelyn J. Milne *- HR Director (former)*
**Subject:** yesterday's meeting

Hello Ladies,

Since my initial email included the Union, I wanted to summarize yesterday's meeting to keep them in the
loop.

Yesterday at approximately 4:10pm Shanna came to my office and stated Jackie wanted to see us in her office
regarding the email I sent her (Shanna) about the complaint against Nicole Allen (aka Nikki), Housing
Manager II, Leasing Operations, RHA. In attendance were Shanna, Jackie Milne and I.

Jackie began the conversation by stating I was not a target and the previous talk I had with Shanna and Sandy
about posting pictures on Face Book on company time was not going to go anywhere, that it was just a heads
up. They reassured me several times the matter was dead. I advised them both the issue I have is not the fact
that Sandy came to give me a heads up about it, it was the fact that Nikki was stalking me on my Face Book page
almost a month after the pictures in question were posted. My Face Book page is public, Nikki is not or has
never been a Face Book friend of mine and she and several other RHA employees have now been blocked. The
pictures were taken and posted at 9am on September 18th, 2015. I am proud of what I do and happy to be here
to serve our participants. I wanted to show "it" off, that I take pride in my job. Approximately Oct 7th or 8th,
Nikki decided to stalk my Face Book page for the sole intention of trying to get me disciplined or fired. I
explained to Jackie and Shanna I was being retaliated against and harassed by Nikki and have been since 2012
and I wanted the behavior to cease as this has caused me a lot of undue stress, mental anguish and pain.
Enough is enough. Nikki somehow believes I showed Interim E.D., Adam McFadden a picture of her (Nikki) and
Jennifer Floss playing hockey in the hallway on company time, while their boss, Dan Sturgis was on vacation.

1

She retaliated against me by stalking my page and taking her newfound evidence to Sandy Whitney, bypassing the chain of command and my immediate supervisor, Shanna Cranmer.

Nikki has had a pattern of harassing, retaliatory behavior against me since I became a Housing Specialist in 2012. During training, I was summoned to Nikki's office where I was given an option to either choose Melissa Oliver or Paul Simmons as my mentor. Personality conflicts with Melissa made me choose Paul. Nikki then assigned me Melissa against my wishes and after she asked me who I preferred. A couple weeks in, my mentor was switched to Shanna who at that time was a Housing Specialist, Shanna then went on leave and I was switched to Pierre Dorancy, new Housing Specialist who according to Nikki "was exceeding all expectations". It was later determined that Pierre was not really exceeding expectations, he just found a short cut to make his work from the reports disappear, leaving Nikki with the false knowledge he was an exceptional Housing Specialist.   It was because of these oversights, my probation was extended and these things beyond my control made it look like I wasn't performing.

Fast forward to 2014, In September, I was forced to go to the Intake Dept for 5 weeks to work under Claudette Wilson, who has since retired. I was told to clean up Sarah Iverson's mess because members in her dept were complaining that she was always calling in. Sarah and I switched positions. At the time she was a Provisional Housing Specialist. Nikki once again pulled me to the side after a few weeks of Intake and stated there was an upcoming opportunity to be a Floater in the Core Dept because Sarah was going to be demoted back to a Clerk I because she didn't know math and ultimately couldn't do her job. She also told me she had a list of people who did not get along with Claudette and those people would work under her (Nikki) and I was one of them. I stated to her having me work in PBV was not a good idea at the time because Shanna, who was promoted and placed as that dept's mgr, didn't know anything about the program. I would also be new and wanted to wait until Shanna was more acclimated to her new position. Based on this hallway conversation, I sent an email to Nikki stating I wanted to work under her in core or as the floater she mentioned. I also have an email from her to this effect. She responded by telling me that my only two options were to work under Shanna in Special Programs or under Claudette in Core. She also mentioned since my office was in the back I had no other choice. ⸺Black                                                      now

During the 5 or 6 weeks I was in the Intake Dept Nikki made sure to have my office moved to the back of the building, yet I was moved right back to Core for another 7 months. She let Julie Fox who was just across the hall move to the window office I was forced to give up. I have always maintained that this unnecessary and costly office move was meant as a retaliatory measure because I knew too much, saw too much and heard too much and Nikki wanted to hide the fact that she was 15 to 20 min late every day and she knew I noticed this. There was no justification to have me move for a 6 week period when I was in core for ½ years then placed back for 7 months. It was retaliation. I was also recently denied the opportunity to move to another office with a window over a person with 7 years less seniority.

Oct 2015 – Sandy and Shanna came to my office to give me a heads up regarding the Face Book pictures. I did tell Sandy I would find out who was targeting me. Approximately the week of the 12th or 19th, a very credible source, Pierre Dorancy, Manager III, Leasing Operations, RHA advised me to "watch my back because she (Nikki) was going to start picking on me and targeting me again" Prior to that he asked me about my Face book page and pictures I posted. I asked him how he knew about that, he stated "Nikki told me and was on her way to tell Sandy with the hopes of having me disciplined". I know Pierre is telling the truth and had the morals to alert me to pending harassment. Pierre told me this after Sandy, Shanna and I met and at the time he didn't know that conversation had taken place.

The conversation yesterday, in H/R, then went on with Jackie asking if I wanted a meeting with Nikki, Shanna, herself and the Union I declined with a statement reiterating that once before Nikki violated an employee's HIPPA rights and breached confidentiality by telling me about a co-workers medical conditions as a justification for that employee not doing her work and making me do it. I could go on about that and the fact that Nikki and Dan tried to give me a "Letter of Concern" turned Housing Spec Responsibility letter in his office at an impromptu intimidation meeting for pushback on Sarah's work. They thought I was taping it and therefore

2

changed the "Letter of Concern title to Hous Spec Resp)that by Nikki's own admission, H/R knew nothing about and that it was just on her desktop. I advised Jackie and Shanna that should there be another issue, because I felt more retaliation is forthcoming, that the Chain of Command be followed as the email states in Interim Executive Director's, Shawn Burrs email. I asked for my complaint to be placed in Nikki's h/r file. Jackie and Shanna thanked me and the meeting ended at 4:38.

These are the events, conversations that took place to the best of my knowledge. Thank you.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

Shanna Cranmer, Jackie Milne +
Nicole Allen are friends.

not ten minutes after our meeting
Shanna + Jackie                "Confidential"
entered Nikki's office + closed the door.
They disclosed everything. The (this)
email was shown to her shortly after
it was written.

**Monica** Stepney     Exh 3-a

| | |
|---|---|
| **From:** | Monica Stepney |
| **Sent:** | Monday, November 16, 2015 11:14 AM |
| **To:** | 'david.ging@eeoc.gov' |
| **Subject:** | FW: disturbing news |

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended
recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Monica Stepney
**Sent:** Friday, October 23, 2015 8:59 AM
**To:** Lisa Tarantello
**Subject:** RE: disturbing news

Know what? Let me call you. And instead of responding to me via email, Shanna just left, asking me how I
wanted her to handle. I told her hr had not been notified at this point and she can let me know after she speaks
to Sandy (on Monday). I also told her I plan to file some sort of harassment grievance because I am sick of this.
She said ok she will get bak to me. Now wasn't my email clear when I requested to have all communication I
email....

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended
recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Lisa Tarantello
**Sent:** Friday, October 23, 2015 8:52 AM
**To:** Monica Stepney
**Subject:** RE: disturbing news

Does this person know

**From:** Monica Stepney
**Sent:** Friday, October 23, 2015 8:49 AM
**To:** Lisa Tarantello
**Subject:** RE: disturbing news

I am going to reveal because I know they will think it's the wrong person.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended
recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Lisa Tarantello
**Sent:** Friday, October 23, 2015 8:47 AM
**To:** Monica Stepney
**Subject:** RE: disturbing news

Are you going to reveal your source or are you going to have them do their investigaton?

**From:** Monica Stepney
**Sent:** Thursday, October 22, 2015 4:08 PM
**To:** Shanna Cranmer
**Cc:** Lisa Tarantello
**Subject:** disturbing news

Hi Shanna,
In an effort to follow the chain of command, I have to tell you that it has come to my attention the FaceBook
incident Sandy and I discussed (being on Facebook allegedly during business hrs) on 10/9 in your presence
was done intentionally to solicit some type of negative response from me by the manager who somewhat
stalked me on Facebook.

Here's the situation; I was told (by another employee who shall remain anonymous) that the individual
'Nikki' "had nothing better to do" and decided to go on my Facebook page to "look for anything to try to have
disciplinary action taken against me." According to the anonymous employee, this retaliation was set in
motion stemming from a picture (among other more recent things) Adam McFadden received of Nikki and
Jennifer playing some type of game in the hallway during work hours. Apparently she believes I am the one
who sent it. In any case, this person also told me that Nikki stated to her/him I was her next target. This
person seems credible and this is not information that I was looking or fishing for. I was standing at the
copier when this person saw me and decided to "warn me" that I was her (Nikki's)next "target".

I feel harassed, retaliated against, severely stressed and I am utterly shocked, upset and confused by this.
Shocked & upset because I haven't been in her dept for a while, I say hi and bye and keep it professional and

2

confused because who has that kind of time to gossip and play games with all the work we have to do, especially about a subordinate employee in an entirely different department. Since you are my immediate supervisor, I am asking that you, in confidence, escalate this to Sandy and H/R as I need to know why I am and once again have been labeled a target. I am also requesting, any replies/correspondence be in writing as I plan to file a formal complaint against that manager.

Thank you.


*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*


**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

## Monica Stepney

| | |
|---|---|
| **From:** | Monica Stepney |
| **Sent:** | Monday, November 16, 2015 11:14 AM |
| **To:** | 'david.ging@eeoc.gov' |
| **Subject:** | FW: "heads up" |

Timeline of events...see below. 1 of several emails.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended
recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Monica Stepney
**Sent:** Friday, October 09, 2015 4:33 PM
**To:** Monica Stepney; Lisa Tarantello; Lynette McGee
**Subject:** RE: "heads up"

...and I can't post a picture on my time but managers can play golf or hockey in the hall way on company time
and like racially biased views on Facebook.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended
recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Monica Stepney
**Sent:** Friday, October 09, 2015 4:23 PM
**To:** Lisa Tarantello; Lynette McGee
**Subject:** "heads up"

**Today at approximately 2:50, I was paid a visit in my office by Sandy Whitney and Shanna Cranmer. Whether
or not I taped it to have accurate notes later, I will keep to myself.**

1

Sandy asked if I had a few minutes and then said she wanted to go get Shanna. She returned and the 1st thing she said was that it wasn't disciplinary, no letter of concern or anything like that. She was just giving me a heads up. First she stated my request for the Driver Safety class was not approved because even though I drove to sites for work to do lease ups it didn't warrant me taking the class. She also stated they were actively working on bringing that class in-house and encouraged me to keep pursuing training. That's all well and good but I was invited to take that class and then denied and had to fight for the training I just attended (Basic Supervisor). She then re-iterated I wasn't in trouble and it was just a heads up that someone (who she couldn't divulge) came to her and told her I was on Facebook on company time posting pictures. I advised her it must have been a day I called to say I was going to be late, arrived earlier than expected and posted the pictures, so even though I was at work I was on my time, not company time. I then asked her if the person who had it out for me and wanted to begin this witch-hunt knew this. She said it wasn't their responsibility to know. I then stated in the 10 years I been here, I've never been known to waste company time and the fact the person was going to remain anonymous causes a hostile work environment and that people need to get their facts straight before running and telling anything. I also told her I have every intention of finding out who the anonymous person is. She said she herself was shocked at getting the report because I am not an employee known to do that but had to talk to me regardless. She said she was talking to me and wanted Shanna present in-case this person, "who may even be a participant" contacted Shanna. I asked Shanna if this was the 1st she heard of this and she reluctantly said yes, while looking away. Body language says a lot to me. Anyway Sandy stated she hoped I wouldn't take this any further and I said I wasn't sure and that I was very disturbed by this but after talking and her telling me she was just giving me a heads up to avoid any future problems, I told her I wouldn't pursue it. Oddly enough these pictures that took 5 seconds to post were taken on Sept 18th, it's Oct 9, so why, 3 weeks later I'm just now hearing about it. Was this mystery tattletale stalking my Facebook page looking for something to try to get me disciplined for. Why did it take 3 weeks to come to MY attention. And why wouldn't Shanna as my direct supervisor come to me 1st. Didn't we just get a chain of command email? I find the timing odd in that I am the 4th person out of the "FAB 5" (Debbie S, Harolda W, Marvel CS, Jeanette P & I) to have an issue – all within a few days of each other. I feel like once again we have been and are subtly being singled out and harassed. I am sure there will be more to come. And yes I get off at 4:30 but this email was written to my Union Stewards, pertaining to an incident brought to my attention by the Director of Public Housing regarding a work issue. Thank you. Please put in my union folder as I may need this at a later date.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

**Monica Stepney**    Exh 36 ( Response ) to Union )

| | |
|---|---|
| From: | Lisa Tarantello |
| Sent: | Monday, October 12, 2015 8:55 AM |
| To: | Monica Stepney |
| Cc: | Lynette McGee |
| Subject: | RE: "heads up" |

Hi Monica,
I am curious did you happen to ask what day you were posting on face book during work hours.
Why do you think they did not want you to take this any further?

**From:** Monica Stepney
**Sent:** Friday, October 09, 2015 4:33 PM
**To:** Monica Stepney; Lisa Tarantello; Lynette McGee
**Subject:** RE: "heads up"

...and I can't post a picture on my time but managers can play golf or hockey in the hall way on company time and like racially biased views on Facebook.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*


**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Monica Stepney
**Sent:** Friday, October 09, 2015 4:23 PM
**To:** Lisa Tarantello; Lynette McGee  -- Union   Stewards
**Subject:** "heads up"

Today at approximately 2:50, I was paid a visit in my office by Sandy Whitney and Shanna Cranmer. Whether or not I taped it to have accurate notes later, I will keep to myself.
Sandy asked if I had a few minutes and then said she wanted to go get Shanna. She returned and the 1st thing she said was that it wasn't disciplinary, no letter of concern or anything like that. She was just giving me a heads up. First she stated my request for the Driver Safety class was not approved because even though I drove to sites for work to do lease ups it didn't warrant me taking the class. She also stated they were actively working on bringing that class in-house and encouraged me to keep pursuing training. That's all well and good but I was invited to take that class and then denied and had to fight for the training I just attended (Basic Supervisor). She then re-iterated I wasn't in trouble and it was just a heads up that someone (who she couldn't divulge) came to her and told her I was on Facebook on company time posting pictures. I advised her it must have been a day I called to say I was going to be late, arrived earlier than expected and posted the pictures, so even though I was at work I was on my time, not company time. I then asked her if the person who had it out for me and wanted to begin this witch-hunt knew this. She said it wasn't their responsibility

1

to know.  I then stated in the 10 years I been here, I've never been known to waste company time and the fact the person was going to remain anonymous causes a hostile work environment and that people need to get their facts straight before running and telling anything.  I also told her I have every intention of finding out who the anonymous person is.  She said she herself was shocked at getting the report because I am not an employee known to do that but had to talk to me regardless.  She said she was talking to me and wanted Shanna present in-case this person, "who may even be a participant" contacted Shanna.  I asked Shanna if this was the 1st she heard of this and she reluctantly said yes, while looking away.  Body language says a lot to me.  Anyway Sandy stated she hoped I wouldn't take this any further and I said I wasn't sure and that I was very disturbed by this but after talking and her telling me she was just giving me a heads up to avoid any future problems, I told her I wouldn't pursue it.  Oddly enough these pictures that took 5 seconds to post were taken on Sept 18th, it's Oct 9, so why, 3 weeks later I'm just now hearing about it.  Was this mystery tattletale stalking MY Facebook page looking for something to try to get me disciplined for.  Why did it take 3 weeks to come to MY attention.  And why wouldn't Shanna as my direct supervisor come to me 1st.  Didn't we just get a chain of command email?  I find the timing odd in that I am the 4th person out of the "FAB 5" (Debbie S, Harolda W, Marvel CS, Jeanette P & I) to have an issue – all within a few days of each other.  I feel like once again we have been and are subtly being singled out and harassed.  I am sure there will be more to come.  And yes I get off at 4:30 but this email was written to my Union Stewards, pertaining to an incident brought to my attention by the Director of Public Housing regarding a work issue.  Thank you.  Please put in my union folder as I may need this at a later date.


*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*


Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

**Monica** Stepney　　　　　　　　*3 C*

| | |
|---|---|
| **From:** | Monica Stepney |
| **Sent:** | Wednesday, November 04, 2015 10:53 AM |
| **To:** | Jacquelyn J  Milne |
| **Subject:** | RE: meeting tomorrow |

OK but I would like to see you privately today if you have time, if its ok.  Thanks.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended
recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Jacquelyn J. Milne
**Sent:** Wednesday, November 04, 2015 10:52 AM
**To:** Monica Stepney
**Subject:** RE: meeting tomorrow

Monica,　　　　　*protective*

This has nothing to do with Nikki.  You believe she is the person who told Sandy about the Face book pictures
you posted during work hours.  As I stated in our meeting with Shanna, I'm not going to share with you who
brought this information forward to Sandy. You stated in the meeting that Pierre is the one who told you it was
Nikki and he also told you to "watch your back". Shawn and I investigated this allegation separately with Pierre.
We feel this needs to be discussed with both parties, that is why we are having the meeting tomorrow with you
and Pierre.

Jackie Milne
Director of Human Resources
Rochester Housing Authority
Ph:  (585)697-6193
Fax:  (585)362-8693

Statement of Confidentiality:  This electronic message may contain privileged or confidential information. If you
are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Monica Stepney
**Sent:** Wednesday, November 04, 2015 10:33 AM
**To:** Jacquelyn J. Milne
**Subject:** meeting tomorrow

**Hi Jackie,**

I am a little baffled as to why I am being called in to meet with Pierre for blowing the whistle on Nikki. Do you have time today to meet with me privately? There are some things you really need to know prior to tomorrow.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

## Monica Stepney

| | |
|---|---|
| **From:** | Monica Stepney |
| **Sent:** | Monday, November 16, 2015 11:15 AM |
| **To:** | 'david.ging@eeoc.gov' |
| **Subject:** | FW: Meeting Forward Notification: Monica/Pierre |

**Sensitivity:** Private

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended recipient of
this e-mail, please delete it from your system and advise the sender.

**From:** Monica Stepney
**Sent:** Wednesday, November 04, 2015 11:16 AM
**To:** Lisa Tarantello
**Subject:** RE: Meeting Forward Notification: Monica/Pierre
**Sensitivity:** Private

Ok thanks.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended recipient of
this e-mail, please delete it from your system and advise the sender.

**From:** Lisa Tarantello
**Sent:** Wednesday, November 04, 2015 11:16 AM
**To:** Monica Stepney
**Subject:** RE: Meeting Forward Notification: Monica/Pierre
**Sensitivity:** Private

Ok I will respond to Jackie that you will be there without me.
Yes let me know.

---

**From:** Monica Stepney
**Sent:** Wednesday, November 04, 2015 11:06 AM
**To:** Lisa Tarantello
**Subject:** RE: Meeting Forward Notification: Monica/Pierre
**Sensitivity:** Private

You cant be there anyway so I will let you know what happens. Its not disciplinary per Jackie.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

---

**From:** Lisa Tarantello
**Sent:** Wednesday, November 04, 2015 11:06 AM
**To:** Monica Stepney
**Subject:** RE: Meeting Forward Notification: Monica/Pierre
**Sensitivity:** Private

Hi Monica,
I just told Jackie I was not free during that time I have a lease and you are welcome to have another steward present.
I was not sure why I was copied in?? Then I was told that you invited me.

---

**From:** Monica Stepney
**Sent:** Wednesday, November 04, 2015 10:32 AM
**To:** Jacquelyn J. Milne
**Cc:** Lisa Tarantello
**Subject:** RE: Meeting Forward Notification: Monica/Pierre
**Sensitivity:** Private

Ok thanks.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
**This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.**

**From:** Jacquelyn J. Milne
**Sent:** Wednesday, November 04, 2015 10:14 AM
**To:** Monica Stepney
**Cc:** Sandra Whitney
**Subject:** RE: Meeting Forward Notification: Monica/Pierre
**Sensitivity:** Private

Monica,

I'm not sure why you forwarded this to Lisa, however since this isn't a disciplinary meeting the union can't be in attendance.

Jackie Milne
Director of Human Resources
Rochester Housing Authority
Ph:  (585)697-6193
Fax:  (585)362-8693

Statement of Confidentiality: This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Microsoft Outlook **On Behalf Of** Monica Stepney
**Sent:** Wednesday, November 04, 2015 9:57 AM
**To:** Jacquelyn J. Milne
**Subject:** Meeting Forward Notification: Monica/Pierre
**Sensitivity:** Private

## Your meeting was forwarded

Monica Stepney  has forwarded your meeting request to additional recipients.

**Meeting**

Monica/Pierre

**Meeting Time**

Thursday, November 05, 2015 11:00 AM-11:30 AM.

**Recipients**

Lisa Tarantello

All times listed are in the following time zone: (UTC-05:00) Eastern Time (US & Canada)

Sent by Microsoft Exchange Server 2010

**Monica** Stepney        Exhibit 4                                    1 of 3

| | |
|---|---|
| **From:** | Adam McFadden |
| **Sent:** | Wednesday, December 17, 2014 3:47 PM |
| **To:** | RHASTAFF |
| **Subject:** | Thank You |

Dear RHA Staff:

I want to thank you for all that you have done for me during my time with the Rochester Housing Authority. It has been a pleasure working with you and representing the authority. Due to the controversy and discourse to date it has become a huge distraction. As a result, to assist the Board in moving forward, I am offering my resignation as the Interim Executive Director effective 12/20/2014 6:00pm.

As I have completed (Phase 1) what the board wanted me to do it is now time for me to move on. It seems as if HUD has a different set of rules for different people. I am not sure what makes my circumstances and employment any different from the last Interim Executive Director. I took this opportunity to be a voice for our most vulnerable population in our city. As a servant leader I recognize in order for the attention to be on the 20,000+ people we represent I must remove myself from the spotlight.

This decision was not an easy one and took a lot of consideration. However, I am confident that the new direction the board wants to take the authority is a positive move towards fulfilling the board's goals. I wish the authority continued success and once again, would like to thank you for allowing me to be a part of your team.

Sincerely,

Adam McFadden
Interim Executive Director

Dan Sturgis allegedly called in a favor to Lisa ?, high up on the HUD Buffalo ladder to try to ensure Adam was removed from office because if

"he, Nikki, Jennifer Flass + Kathy Murphy were made to answer to a black man with saggy pants + dreads, they would quit"

**Monica** Stepney                                          *2 of 3*

| | |
|---|---|
| **From:** | Adam McFadden |
| **Sent:** | Friday, November 14, 2014 10:02 AM |
| **To:** | RHASTAFF |
| **Subject:** | RHA's New Direction |

I know that the past thirty days has brought a lot of turmoil and change to the Rochester Housing Authority. I know that can be a difficult thing. Reading negative press about the place you work and the people you work for can be upsetting. I want to just say that I understand these are difficult times. I want to personally thank each and every one of you for working through these difficult times with such professionalism.

I have met extensively with Board members. My understanding and belief is that the RHA Board is trying to move forward in a positive direction. Neither the Board nor I believe there was any wrong-doing. However, they are trying to make positive changes. They are working to strengthen internal controls, assure fair practices, and increase transparency. They feel, and I agree, that it is their responsibility to be sure that the Rochester Housing Authority is operated in a way that is above reproach - that there isn't anything we are doing in our day to day operations that could be considered less than optimal.

Please don't misunderstand the message. I believe that the employees of the Housing Authority are doing a great job. My understanding is that the Board feels the same way. What may change in the coming months are some policies or procedures - changes that will increase your ability to do a great job.

In the meantime, my door is open. Send me an email, leave me a message, or even stop by my office. How do you think we can improve operations? Since you are on the front lines, I believe you are the greatest source of information on how we can do that. I am listening.

Sincerely,

Adam McFadden

1

**Monica Stepney**

| | |
|---|---|
| **From:** | Adam McFadden |
| **Sent:** | Monday, November 03, 2014 4:29 PM |
| **To:** | RHASTAFF |
| **Subject:** | It was great to meet you |

Dear RHA Staff,

I have really enjoying meeting so many of you over the past couple of weeks. I wanted to let you know that I am really excited about the work that you all do, and look forward to assisting you in any way that I can. To this end, I want to let you know I have a real open door policy and will make time to meet you if you have a concern. Please stop up to see me. If I happen to be in a meeting, Maria will be more than happy to schedule a time for us to meet.

I am looking forward to helping you to do the best job possible for those we serve.

-Adam

1

## Monica Stepney

| | |
|---|---|
| **From:** | Jacquelyn J. Milne |
| **Sent:** | Wednesday, October 15, 2014 8:33 AM |
| **To:** | RHASTAFF |
| **Subject:** | FW: Termination of Executive Directors Contract |

**Importance:** High

*Then they Forced out Adam*

George Moses, Board Chair Person requested that I forward this email to all RHA staff.

Jackie Milne
Director of Human Resources
Rochester Housing Authority
Ph:  (585)697-6193
Fax:  (585)362-8693

**From:** George Moses [mailto:gmoses@neadrochester.org]
**Sent:** Tuesday, October 14, 2014 10:56 PM
**To:** Shawn Burr; Mark Hill; Jacquelyn J. Milne; Christine Juby; Linda Stango; Sandra Whitney; johnpage
**Subject:** Termination of Executive Directors Contract

It is with regret that I inform you that the board voted at the special meeting held tonight (10/14/14) to terminate the contract of the Executive Director, Alex Castro, effective immediately.

Myself and Commissioner Page will be present during the 9:00am 10/15/2014 senior staff meeting  to answer questions as appropriate.


--
George H. Moses
Executive Director, NEAD/ Group 14621
Director, Rochester Freedom Schools
Office (585) 224-2862 Fax (585) 654-5307
United Way donor #550
www.neadrochester.org
www.group14621.com

## Emancipate Yourself From Mental Slavery (Read A Book)-*Bob Marley*

Confidential Notice. This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

**Monica** Stepney

| | |
|---|---|
| From: | Alex Castro |
| Sent: | Wednesday, March 05, 2014 4.50 PM |
| To: | RHASTAFF |
| Subject: | Another leaf falls |

*Because he (Alex) was alleged is Robbing RHA blind*

Hello Staff,

It has been a while since my last email regarding this issue. Last time I promised I would not send emails of smaller housing authorities "falling". The only reason I am sending this one is because it is a about a large housing authority about our size.
http://www.star-telegram.com/2014/03/04/5620852/fort-worth-housing-authority-switches.html?rh=1
http://www.ftwha.org/fwha_hp.asp

No matter what, we must fight this trend and can't be complaisant. We must understand that unlike government entities, housing authorities are not a monopoly or government entity and in fact we need to be competitive. There are some facts about this housing authority that drove them to their decision and there is no correlation at this time to us. Nevertheless, this reminds us of our need to continue in the path we are in.

HUD's 1999 document about running housing authorities like a private management company. Page 16 describes what we are doing ourselves to be more competitive.
http://books.google.com/books?id=Q37YCrJ4GccC&pg=PA16&lpg=PA16&dq=privitize+%26+housing+authority&source=bl&ots=Dk9WqNsvsq&sig=NrQ4cDeepsBFUlBo_DzpQs5EyzU&hl=en&sa=X&ei=dZoXU8e_BMWcyQGT_YGQBA&ved=0CEwQ6AEwBA#v=onepage&q&f=false

Thanks for your attention. Lets keep up the great work and stay in the tree.
Thanks,


Alex Castro
Executive Director
Rochester Housing Authority

**Monica Stepney**  ~~Exhibit 5~~  ~~1 of 2~~

From:        Monica Stepney
Sent:        Friday, December 18, 2015 11:41 AM
To:          'david.ging@eeoc.gov'
Subject:     FW: Investigative Services Consultant

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended recipient of
this e-mail, please delete it from your system and advise the sender.

**From:** Shawn Burr
**Sent:** Sunday, June 28, 2015 11:07 PM
**To:** RHASTAFF
**Subject:** Investigative Services Consultant

Dear staff,

We have procured an investigative services consultant to perform an internal investigation regarding an anonymous
letter sent to the RHA Board of Commissioners. The consultant is CHS Project Management and the contact person is
Cynthia Herriott. We encourage staff to schedule interviews with Cynthia who will be available on Mondays and
Wednesdays from 10:00AM to 2:00PM beginning 7/1/15. Other times can be scheduled if you cannot make these
times. Employees will **not** be required to use leave time to meet with Cynthia and she will tell you your options and the
procedure to follow when you call her.   Cynthia can be reached at (585)202-6923. If you have any questions, please
feel free to contact me. Thank you in advance for your cooperation during the investigation.

Sincerely,
Shawn

Shawn Burr
Interim Executive Director
Rochester Housing Authority
675 West Main Street
Rochester, NY 14611
sburr@rochesterhousing.org
Office: (585)697-6184
Fax: (585)362-8684

1

**Monica** Stepney                                                     *2 oF 2*

| | |
|---|---|
| **From:** | Shawn Burr |
| **Sent:** | Tuesday, December 29, 2015 4:12 PM |
| **To:** | RHASTAFF |
| **Cc:** | RHA Board Of Commisioners; H. Todd Bullard |
| **Subject:** | Investigation Report |

To RHA Staff,

As you know, upon advice of legal counsel, an independent internal confidential investigation was conducted to examine prior workplace issues brought to our attention following our appointment to the Board of Commissioners in March 2014. We reviewed these complaints and determined they were serious enough to initiate an independent investigation. Many of you participated in this investigation and we are grateful for your involvement. In fact, nearly half of you participated, which demonstrates to us your commitment to this organization and making it a truly dynamic place to work and improving your workplace environment and the residents we serve.

We want you to know that the investigation has been completed and several recommendations were made to us. Those recommendations include:

- Making immediate and decisive personnel changes.
- Restructuring tasks and responsibilities to distribute authority and opportunity among staff.
- Having staff and management participate in intensive diversity and sensitivity training.
- Ensuring that a diversity and inclusion policy is drafted and adopted.
- Undertaking a strategy to restore employee confidence in the complaint process.
- Recruiting, hiring, appointing, promoting and training more diverse staff that would operate at the higher levels of RHA, or staff skilled in the areas of diversity and inclusion.
- Implementing along with staff, as part of the strategic plan, recommendations to increase diversity as a representative element in management.

We also want you to know that proactive steps have been and are being taken to implement these recommendations with the assistance of Interim Executive Director, Shawn Burr and legal counsel. Change is forthcoming and we continue to welcome your input.

RHA Board of Commissioners
and Interim Executive Director

Shawn Burr
Interim Executive Director
Rochester Housing Authority
675 West Main Street
Rochester, NY 14611
sburr@rochesterhousing.org
Office: (585)697-6184
Fax: (585)362-8684



ROCHESTER
Housing Authority

**Monica** Stepney

| | |
|---|---|
| **From:** | Shawn Burr |
| **Sent:** | Wednesday, February 03, 2016 9:42 AM |
| **To:** | RHASTAFF |
| **Subject:** | Human Resources |

*Possibly Due to Findings*

Good morning,

Director Jackie Milne, is out on administrative leave until further notice. Becky Maslowski will be in charge of HR during this time and I will be assisting when needed. Even though we are short staffed, we will respond promptly to your needs and your cooperation and understanding is appreciated. Please feel free to see me with any questions.

Sincerely,
Shawn

Shawn Burr
Interim Executive Director
Rochester Housing Authority
675 West Main Street
Rochester, NY 14611
sburr@rochesterhousing.org
Office: (585)697-6184
Fax: (585)362-8684



ROCHESTER
Housing Authority

Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

1

## Deborah Stenzel

**From:** Shawn Burr
**Sent:** Thursday, June 11, 2015 11:39 AM
**To:** RHASTAFF
**Subject:** Resignation

Good morning,

(Forced by Board)

I would like to inform you that Dan Sturgis, Director of Leasing Operations, has tended his resignation with his last day of work being June 23, 2015.

I will be working with senior staff to put a plan in place moving forward.  We are fortunate that Leasing Operations has a great staff that will assist us during this transition.  Within the next few days this position will be posted internally, so please respond promptly if you are interested.

We wish Dan luck in his future endeavors!

Shawn

Shawn Burr
Interim Executive Director
Rochester Housing Authority
675 West Main Street
Rochester, NY 14611
sburr@rochesterhousing.org
Office: (585)697-6184
Fax: (585)362-8684

Statement of Confidentiality
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

≈ AO 187 (Rev. 7/87) Exhibit and Witness List    Exhibit 10

# UNITED STATES DISTRICT COURT

DISTRICT OF _____

### EXHIBIT AND WITNESS LIST

V. _____

Case Number: _____

| PRESIDING JUDGE | | | | | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|---|---|
| TRIAL DATE (S) | | | | | COURT REPORTER | COURTROOM DEPUTY |
| PLF NO | DEF NO | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES | |
| | | | Intestig | for | Cynthia Herriot | |
| | | | . | D | Adam McFadden | |
| | | | R | by D | Phil Walker | |
| | | | R | D | Benjamin Sims | |
| | | | | D | Bryan Flagg | |
| | | | R | Rev D | Debbie Stenzel | |
| | | | R | D | Harolda Wilcox | |
| | | | F | D | Monique Brownlove | |
| | | | R | D | Wanda Wilson | |
| | | | F | D | Carl Aaron | |
| | | | F | D | Nelda Johnson | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size

Page 1 of __1__ Pages

¾AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

### DISTRICT OF _____

## EXHIBIT AND WITNESS LIST

V.

Case Number: _____

| PRESIDING JUDGE | | | | | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|---|---|
| TRIAL DATE (S) | | | | | COURT REPORTER | COURTROOM DEPUTY |

| PLF NO | DEF NO | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| | | | D R | | Marvel Carter-Shaw |
| | | | | R | Jeanette Pecoraro |
| | | | | D | Carola Boaza Meade |
| | | | | D | Valaida DeCarlis |
| | | | | D | Fran ? |
| | | | R | D | Lynette McBee |
| | | | R | D | Jaquanda Jones |
| | | | R | D | Straudie Bryant |
| | | | R | D | James Hill |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

\* Include a notation as to the location of any exhibit not held with the case file or not available because of size

Page 1 of ___1___ Pages

| | |
|---|---|
| **From:** | Kathleen Murphy |
| **Sent:** | Monday, September 28, 2015 9:14 AM |
| **To:** | Monica Stepney |
| **Subject:** | RE: RA denial |

I understand he may have told you that, but what he wrote is not. Remember, I am only looking at the actual request, not his phone call. *Sarcasm + unnecessary Response*

**From:** Monica Stepney
**Sent:** Monday, September 28, 2015 8:57 AM
**To:** Kathleen Murphy
**Subject:** RE: RA denial

He specifically told me he needed an extra bedroom for his equipment. I will call him. Thanks.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

**From:** Kathleen Murphy
**Sent:** Monday, September 28, 2015 8:50 AM
**To:** Monica Stepney
**Subject:** RA denial

Hi Monica, I am denying the RA for Pablo Valli – the reason is in the blue notes, but let me know if you or he need more explanation – a letter will be sent to him

Just for future reference – you may want to assist your customers in writing their requests – his is all about he needs help remembering things –it is actually not about getting a separate bedroom. Is he really asking for a live in aide? in which case, this is a whole 'nother thing......... please clarify what he is asking for before submitting a new request.

Thanks

*Kathy Murphy*

*Statement of Confidentiality - This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.*

1

**Monica Stepney**   *Dont like minorities to learn*
                                                        *too much*

| | |
|---|---|
| **From:** | Kathleen Murphy |
| **Sent:** | Wednesday, February 13, 2013 4:11 PM |
| **To:** | Monica Stepney |
| **Subject:** | RE: rent increase (nicole mitchell) |

*poor mgmt*

I guess I or Nikki should review the file.

**From:** Monica Stepney
**Sent:** Wednesday, February 13, 2013 4:04 PM
**To:** Kathleen Murphy
**Cc:** Shanna Cranmer; Shannon Serio
**Subject:** RE: rent increase (nicole mitchell)

I don't know. That's what I was asking. I was told it was up to the manager to decide whether or not to make the tnt pay it back or just go ahead and pay the LL in these situations.

*Monica Stepney*
*Housing Specialist / Notary*
*Fraud & Compliance*
*Leasing Operations - RHA*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**From:** Kathleen Murphy
**Sent:** Wednesday, February 13, 2013 3:55 PM
**To:** Monica Stepney
**Cc:** Shanna Cranmer; Shannon Serio
**Subject:** RE: rent increase (nicole mitchell)

Not sure what one has to do with the other.

URP is still HAP, just paid to the tenant. You cannot retroactively increase the tenant portion, which is what you are suggesting. Even with a rent increase, doesn't the tenant still get URP?

**From:** Monica Stepney
**Sent:** Wednesday, February 13, 2013 2:44 PM
**To:** Kathleen Murphy
**Cc:** Shanna Cranmer; Shannon Serio
**Subject:** rent increase (nicole mitchell)

I have a 2/1/13 rent increase and it looks like the LL is supposed to get a $29 adjustment, however the tnt received $29 as an urp pymt. Should I still pay the LL the adjustment or is it up to the tnt to give this to LL?

*Monica Stepney*
*Housing Specialist / Notary*
*Fraud & Compliance*
*Leasing Operations - RHA*
*585-697-6111*
*585-362-8611 - fax*

**Monica** Stepney

| | |
|---|---|
| **From:** | Kathleen Murphy |
| **Sent:** | Thursday, February 14, 2013 12 25 PM |
| **To:** | Shanna Cranmer |
| **Cc:** | Monica Stepney |
| **Subject:** | RE: rent increase (nicole mitchell) |

Thanks. I am sure you will know what is the correct course to take, feel free to ask me if you have any concerns.

**From:** Shanna Cranmer
**Sent:** Thursday, February 14, 2013 8:44 AM
**To:** Kathleen Murphy
**Cc:** Monica Stepney
**Subject:** FW: rent increase (nicole mitchell)

Hi. I really haven't had a chance to look at the file. Monica said that the tenant's share is going up, probably because she's overhoused. When she does the 2/1 the tenant' share goes up therefore no UAP. Since the tenant did not get a 30 day notice of the rent increase for Olean, I would think we would let her keep it. I will look at it today.

**From:** Monica Stepney
**Sent:** Wednesday, February 13, 2013 4:12 PM
**To:** Kathleen Murphy
**Cc:** Shanna Cranmer
**Subject:** RE: rent increase (nicole mitchell)

Ok, Shanna has it to go over. Thanks.

*Monica Stepney*
*Housing Specialist / Notary*
*Fraud & Compliance*
*Leasing Operations - RHA*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**From:** Kathleen Murphy
**Sent:** Wednesday, February 13, 2013 4:11 PM
**To:** Monica Stepney
**Subject:** RE: rent increase (nicole mitchell)

I guess I or Nikki should review the file.

**From:** Monica Stepney
**Sent:** Wednesday, February 13, 2013 4:04 PM
**To:** Kathleen Murphy
**Cc:** Shanna Cranmer; Shannon Serio
**Subject:** RE: rent increase (nicole mitchell)

I don't know. That's what I was asking. I was told it was up to the manager to decide whether or not to make the tnt pay it back or just go ahead and pay the LL in these situations.

**From:** Kathleen Murphy
**Sent:** Wednesday, February 13, 2013 3:55 PM
**To:** Monica Stepney
**Cc:** Shanna Cranmer; Shannon Serio
**Subject:** RE: rent increase (nicole mitchell)

Not sure what one has to do with the other.

URP is still HAP, just paid to the tenant. You cannot retroactively increase the tenant portion, which is what you are suggesting. Even with a rent increase, doesn't the tenant still get URP?

**From:** Monica Stepney
**Sent:** Wednesday, February 13, 2013 2:44 PM
**To:** Kathleen Murphy
**Cc:** Shanna Cranmer; Shannon Serio
**Subject:** rent increase (nicole mitchell)

I have a 2/1/13 rent increase and it looks like the LL is supposed to get a $29 adjustment, however the tnt received $29 as an urp pymt. Should I still pay the LL the adjustment or is it up to the tnt to give this to LL?

**Monica** Stepney

**From:**            Kathleen Murphy
**Sent:**            Monday, November 05, 2012 4:32 PM
**To:**              Shannon Serio; Monica Stepney
**Subject:**         pv rent increases

Look good – what a great start!

Monica – I am returning yours, as you forgot to attach a copy of the rent increase approval letter to the packet in the file
– we need to have that documentation in order to prove to an auditor we were authorized to change the rent.

AND;

I guess we forgot to tell you that you need to sign the rent summary sheets, or initial them somewhere, so we know that
you approved them.    Please do that from now on.

Kathy Murphy

1

**Monica** Stepney

| | |
|---|---|
| **From:** | Kathleen Murphy |
| **Sent:** | Wednesday, August 22, 2012 10:35 AM |
| **To:** | Monica Stepney |
| **Cc:** | Thomas M. Hubert |
| **Subject:** | FW. spreadsheet  as of 8/21/12 |

Monica, please talk with Tom about it, not me. thanks

**From:** Monica Stepney
**Sent:** Wednesday, August 22, 2012 10:29 AM
**To:** Kathleen Murphy
**Subject:** RE: spreadsheet as of 8/21/12

Let me know when to send it. I'm working in it now. Thanks.

*Monica Stepney*
*Clerk III / Notary*
*Fraud & Compliance*
*Leasing Operations - RHA*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**From:** Kathleen Murphy
**Sent:** Wednesday, August 22, 2012 10:28 AM
**To:** Monica Stepney; IT_Support
**Subject:** FW: spreadsheet as of 8/21/12

Yes, I would think so

**From:** Monica Stepney
**Sent:** Wednesday, August 22, 2012 10:26 AM
**To:** Kathleen Murphy
**Subject:** RE: spreadsheet as of 8/21/12

Do you need the most recent copy? I have added a lot of info since the email yesterday.

*Monica Stepney*
*Clerk III / Notary*
*Fraud & Compliance*
*Leasing Operations - RHA*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**From:** Kathleen Murphy
**Sent:** Wednesday, August 22, 2012 10:17 AM
**To:** Thomas M. Hubert; IT_Support

1

**Cc:** Bonita Spencer; Monica Stepney
**Subject:** RE: spreadsheet as of 8/21/12

That works fine for me and sounds like a plan. Joanne Nielans and Ali may also need read access.

**From:** Thomas M. Hubert
**Sent:** Wednesday, August 22, 2012 9:44 AM
**To:** Kathleen Murphy; IT_Support
**Cc:** Bonita Spencer
**Subject:** Re: spreadsheet as of 8/21/12

You would be better moving it off of monica's Z drive and putting it on the Y drive and give monica full rights to it, you and bonnie read access and no access for everyone else.
Tom

**From**: Kathleen Murphy
**Sent**: Wednesday, August 22, 2012 08:50 AM
**To**: IT_Support
**Cc**: Bonita Spencer
**Subject**: FW: spreadsheet as of 8/21/12

Could you please give me and Bonnie Spencer read only rights to this spreadsheet?  Thanks.

**From:** Monica Stepney
**Sent:** Tuesday, August 21, 2012 4:08 PM
**To:** Kathleen Murphy
**Cc:** Bonita Spencer
**Subject:** spreadsheet as of 8/21/12

It is on the z drive...mstepney...leasingops...compliance

*Monica Stepney*
*Clerk III / Notary*
*Fraud & Compliance*
*Leasing Operations - RHA*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Monica Stepney**

| | |
|---|---|
| **From:** | Kathleen Murphy |
| **Sent:** | Tuesday, April 30, 2013 1:38 PM |
| **To:** | Monica Stepney |
| **Subject:** | FW: need mov appt for 5-9, Marjorie Reed |

**Monica, Shannan had sent me this last week — did this get resolved?  I am not sure what was going on here....**

**From:** Monica Stepney
**Sent:** Friday, April 26, 2013 3:16 PM
**To:** Shannan DeLaRosa
**Subject:** RE: need mov appt for 5-9, Marjorie Reed

*Did the I got answer*

I have everything I need required for her to be put in the moving process.  Please add her to the schedule.
Thank you.

*Monica Stepney*
*Housing Specialist / Notary*
*Section 8 - Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**From:** Shannan DeLaRosa   White
**Sent:** Friday, April 26, 2013 3:13 PM
**To:** Monica Stepney
**Subject:** RE: need mov appt for 5-9, Marjorie Reed

Have you received the DOL back yet signed?

*Shannan*
*Laughing is good exercise.*
*It's like jogging on the inside.*

**From:** Monica Stepney
**Sent:** Friday, April 26, 2013 3:11 PM
**To:** Shannan DeLaRosa
**Subject:** need mov appt for 5-9, Marjorie Reed

**She is a 6-1 move**

*Monica Stepney*
*Housing Specialist / Notary*

**Monica** Stepney

| | |
|---|---|
| From: | Kathleen Murphy |
| Sent: | Tuesday, March 25, 2014 1:16 PM |
| To: | Monica Stepney |
| Cc: | Nicole Allen |
| Subject: | RE: mirely ortiz |

*argumentative*
*not helpful*
*condescending*
*sarcastic / facetious*

See my comments:

**From:** Monica Stepney
**Sent:** Tuesday, March 25, 2014 1:03 PM
**To:** Kathleen Murphy
**Cc:** Nicole Allen
**Subject:** RE: mirely ortiz

Mirely Ortiz was supposed to supply the documentation in a timely fashion as to why her mail was being delivered to a different address She returned a statement from the post office verifying their error on 12/31/13. She came in and stated there was an issue with some girls harassing and threatening her & stealing her mail and stated she would return with the police report, she failed to do so. This was after a month after the original request was mailed to verify the address. I did call the LL who informed me they didn't know what was going on. Per training, we have always been advised to investigate when we receive returned mail and if it appears, the tnt has vacated, put a stop on the acct. I don't believe there is any documentation of a vacate in the file or notes; the landlord did not confirm it, and in any event, the proof has been in our hands for months and the hold is still on the account.. If this changed, please advise. It was by the tenants own admission she wasn't staying there I did not see any documentation or notes about her not staying in the unit. = and that she wanted to move per VAWA I saw no documentation that you gave her the VAWA paperwork., hence the reason for the police report. Tnt never followed through, so it seemed she vacated w/o notice so the hap was held.

Daniella Pittman may have been a filing error as I was doing RGE verification all on the same day.

Per traininig, DSS PA budget sheets were viable but I know the f/s are not so I would have had some other way to determine this (i.e word of mouth from tnt) I do not believe that would have ever told you to use budget sheets as third party verification of income other than welfare. You may want to review the verification hierarchy.  *attached*

In looking at the acct, there was no coi done for the 2nd job, so it would have been a happy duck. She is just reporting the job now, so please send the happy duck letter.

*Monica Stepney*
*Housing Specialist / Notary*
*Section 8 - Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**From:** Kathleen Murphy
**Sent:** Tuesday, March 25, 2014 12:45 PM
**To:** Monica Stepney
**Cc:** Nicole Allen
**Subject:** mirely ortiz

1

This tenant was a walk-in, and I was paged to her assistance. She is facing eviction for non payment and it appears to be completely our error.

I reviewed the file today and found the following problems:

File order – looks neat on the face of it. However, recert packets rubberbanded out of order

            3/ l/14  interim on top, but covered by a note from the Post office (see below)

            1/14 AR packet, cover is a FINAL notice of pending termination for failure to show why the mail is delivered to another address.

Mail issue: seems like you were asking tenant to document why mail was returned, and being sent to another address. Tenants can have their mail delivered anywhere they deem appropriate. This is a non issue and should not have been subject to any FINAL NOTICE or HAP being held. You verified with RGE that the services were on. Why no call to the complex to see if she was still there? In any event, the tenant supplied the required info to you on 12/30/13.

There is a document in the file that appears to be for another tenant (Daniella Pittman - RGE Verification)

The HAP was not released and the complex has been unpaid for Feb and March. Someone processed an adjustment for January but still did not release the hold. It appears you put it on hold because of the mail issue and when you received the documentation you requested (on 12/30) you failed to release the hold.

The 3/1 IR was processed on 1/26/14 and you did not at that time release the hold either. The interim removed PA and put in a job. You did not get a PA close letter

You made a referral to Compliance and put in Child Support at $100 per month all based on a CS pass-thru note on the PA budget.

        Welfare budget sheets are not a viable third party verification tool. All that could simply mean is that there is a child support order in place, NOT that any money is being paid out. You still need to verify it, ESPCECIALLY since the tenant did not declare it on her application. In any event, with the PA closing (if it closed) , the pass thru would stop. So it should have been removed. Tenant states she receives $50 and will bring in verification of this by 4/15/14. I noticed in another file we have in compliance that you used the FOOD stamp budget as your sole verification that the tenant was receiving UIB (Cherise Reed). The only thing FS budget verify is FOOD STAMPS.

Tenant returned Monday with a second copy of the PO verification of why her mail was returned. Tenant reports a new job – that's a happy duck, but may need an interim for the reduced child support amount.

I told her we would release the back rent to the landlord with the 4/1 HAP. Please put these in the system and make sure the HAP is released**. IMPORTANT**: please contact the landlord directly to let them know the rent amounts to be released. They have contacted me and wish this information in order to stop the eviction.

Let me know if you have any questions,

Kathy Murphy

The form is available online at:
http://www.hud.gov/offices/pih/programs/ph/rhiip/uivsystem.cfm.

The user's access must be approved by the PHA Executive Director or designee in order for
the local HUD office to process all EIV access requests.  Individuals who will not directly
access the EIV system, but will have access to the EIV data in printed or electronic form is
also required to complete the EIV Access Authorization Form & Rules of Behavior and User
Agreement and maintain on file (do not submit the form to the local HUD office).

8.  **The Verification Hierarchy.**  PHAs should begin with the highest level of verification
techniques.

PHAs are required to access the EIV system and obtain an Income Report for each
household.  The PHA is required to maintain the Income Report in the tenant file along with
the form HUD-50058 and other supporting documentation to support income and rent
determinations for all mandatory annual reexaminations of family income and composition.

If the Income Report does not contain any employment and income information for the
family, the PHA should attempt the next lower level verification technique, as noted in the
below chart.

| Level | Verification Technique | Ranking |
|---|---|---|
| 6 | Upfront Income Verification (UIV) using HUD's Enterprise Income Verification (EIV) system (not available for income verifications of applicants) | Highest (Mandatory) |
| 5 | Upfront Income Verification (UIV) using non-HUD system | Highest (Optional) |
| 4 | Written third Party Verification | High (Mandatory to supplement EIV-reported income sources and when EIV has no data; Mandatory for non-EIV reported income sources; Mandatory when tenant disputes EIV-reported employment and income information and is unable to provide acceptable documentation to support dispute) |
| 3 | Written Third Party Verification Form | Medium-Low (Mandatory if written third party verification documents are not available or rejected by the PHA; and when the applicant or tenant is unable to provide acceptable documentation) |
| 2 | Oral Third Party Verification | Low (Mandatory if written third party verification is not available) |
| 1 | Tenant Declaration | Last (Mandatory; this is used when all methods of obtaining verification are exhausted) |

**Note:**  This verification hierarchy applies to income determinations for applicants and
participants.  However, EIV is not available for verifying income of applicants.

**Verification Technique Definitions**

**Third Party Verification Techniques**

**Upfront Income Verification (UIV) (Level 6/5):** The verification of income before or during a family reexamination, through an independent source that systematically and uniformly maintains income information in computerized form for a number of individuals.

It should be noted that the EIV system is available to all PHAs as a UIV technique. PHAs are encouraged to continue using other non-HUD UIV tools, such as The Work Number (an automated verification system) and state government databases, to validate tenant-reported income.

**Written Third Party Verification (Level 4):** An original or authentic document generated by a third party source dated either within the 60-day period preceding the reexamination or PHA request date. Such documentation may be in the possession of the tenant (or applicant), and is commonly referred to as tenant-provided documents. It is the Department's position that such tenant-provided documents are written third party verification since these documents originated from a third party source. The PHA may, at its discretion, reject any tenant-provided documents and follow up directly with the source to obtain necessary verification of information.

Examples of acceptable tenant-provided documentation (generated by a third party source) include, but are not limited to: pay stubs, payroll summary report, employer notice/letter of hire/termination, SSA benefit verification letter, bank statements, child support payment stubs, welfare benefit letters and/or printouts, and unemployment monetary benefit notices. Current acceptable tenant-provided documents must be used for income and rent determinations.

The PHA is required to obtain at a minimum, two current and consecutive pay stubs for determining annual income from wages. For new income sources or when two pay stubs are not available, the PHA should project income based on the information from a traditional written third party verification form or the best available information.

**Note:** Documents older than 60 days (from the PHA interview/determination or request date) is acceptable for confirming effective dates of income.

**Written Third Party Verification Form (Level 3):** Also, known as traditional third party verification. A standardized form to collect information from a third party source. The form is completed by the third party by hand (in writing or typeset). PHAs send the form directly to the third party source by mail, fax, or email.

It is the Department's position that the administrative burden and risk associated with use of the traditional third party verification form may be reduced by PHAs relying on acceptable documents that are generated by a third party, but in the possession of and provided by the tenant (or applicant). Many documents in the possession of the tenant are derived from third party sources (i.e. employers, federal, state and/or local agencies, banks, etc.).

The Department recognizes that third party verification request forms sent to third party sources often are not returned. In other instances, the person who completes the verification form may provide incomplete information; or some tenants may collude with the third party source to provide false information; or the tenant intercepts the form and provides false information.

The Department requires PHAs to rely on documents that originate from a third party source's computerized system and/or database, as this process reduces the likelihood of incorrect or falsified information being provided on the third party verification request form. The use of acceptable tenant-provided documents, which originate from a third party source, will improve the integrity of information used to determine a family's income and rent and ultimately reduce improper subsidy payments. This verification process will also streamline the income verification process.

**Oral Third Party Verification (Level 2):** Independent verification of information by contacting the individual income/expense source(s), as identified through the UIV technique or identified by the family, via telephone or in-person visit. PHA staff should document in the tenant file, the date and time of the telephone call (or visit to the third party), the name of the person contacted and telephone number, along with the confirmed information.

This verification method is commonly used in the event that the independent source does not respond to the PHA's faxed, mailed, or e-mailed request for information in a reasonable time frame, i.e., ten (10) business days.

## Non-Third Party Verification Technique

**Tenant Declaration (Level 1):** The tenant submits an affidavit or notarized statement of reported income and/or expenses to the PHA. This verification method should be used as a last resort when the PHA has not been successful in obtaining information via all other verification techniques. When the PHA relies on tenant declaration, the PHA must document in the tenant file why third party verification was not available.

## Exceptions to Third Party Verification Requirements

HUD is aware that in some situations, third party verification is not available for a variety of reasons. Oftentimes, the PHA may have made numerous attempts to obtain the required verifications with no success, or it may not be cost effective to obtain third party verification of income, assets, or expenses, when the impact on total tenant payment is minimal. In these cases, the PHA is **required to document in the family file the reason(s) why third party verification was not available.**

The exception to third party verification can be found at 24 CFR §960.259(c)(1) and §982.516(a)(2), which states, "The PHA must obtain and document in the family file third party verification of the following factors, **or must document in the file why third party verification was not available.**"

Case 6:16-cv-06173-FPG-JWF   Document 1   Filed 03/17/16   Page 55 of 59

6

9. **Third party verification requirements.** In accordance with 24 CFR §960.259(c)(1) and 24
CFR §982.516(a)(2) for the Public Housing and the HCV programs, respectively, the PHA
must obtain and document in the tenant file third party verification of the following factors,
or must document in the tenant file why third party verification was not available: (i)
reported family annual income; (ii) the value of assets; (iii) expenses related to deductions
from annual income; and (iv) other factors that affect the determination of adjusted income.

10. **How to comply with and reduce administrative burden of third party verification
requirements of family annual income.** PHAs can comply with and reduce administrative
burden of third party verification requirements for employment, wage, unemployment
compensation and social security benefits, and any other information that is verifiable using
EIV by:

   a. Reviewing the EIV Income Report to confirm/validate tenant-reported income;
      and
   b. Printing and maintaining an EIV Income Report (or an EIV Individual Control
      Number (ICN) page for interim reexaminations as prescribed in Section 12 of this
      Notice) in the tenant file; and
   c. Obtaining current acceptable tenant-provided documentation to supplement EIV
      information; and
   d. Using current tenant-provided documentation and/or third party verification to
      calculate annual income.

   *Note:* Social Security benefit information in EIV is updated every three months. If the
   tenant agrees with the EIV-reported benefit information, PHAs do not need to
   obtain or request a benefit verification letter from the tenant. See PIH Notice
   2010-03 for guidance on verifying Social Security benefit income through the
   EIV system.

The PHA may also reduce the administrative burden of obtaining third party verification by
relying on acceptable documents that are generated by a third party, but provided by the
tenant. Many documents in the possession of the tenant are derived from third party sources
(i.e. employers, federal, state and/or local agencies, banks, etc.).

11. **When the PHA is required to request written third party verification** The PHA must
request written third party verification under the following circumstances:

   a. When the tenant disputes the EIV information and is unable to provide acceptable
      documentation to support his/her dispute (24 CFR §5.236(b));
   b. When the PHA requires additional information that is not available in EIV and/or the
      tenant is unable to provide the PHA with current acceptable tenant-provided
      documentation. Examples of additional information, includes but is not limited to:
      i.   Effective dates of income (i.e. employment, unemployment compensation, or
           social security benefits)
      ii.  For new employment: pay rate, number of hours worked per week, pay
           frequency, etc.
      iii. Confirmation of change in circumstances (i.e. reduced hours, reduced rate of
           pay, temporary leave of absence, etc.)

**Monica** Stepney

| | |
|---|---|
| **From:** | Kathleen Murphy $\sim \mathcal{H} \mathcal{M} \mathcal{Q}$ |
| **Sent:** | Tuesday, March 08, 2016 3:07 PM |
| **To:** | Amy Pierson; Angie Rivera, Annie Mulligan; Bonita Spencer, Carol Leslie; Carol Richardson; Cheryl Bazil-Vasko; Cindy Arnold; Dan Butler; Dot Gulardo; Harolda Wilcox; Hector Rodriguez, Hemily Sotomayor, Jackie Melia; Jaquanda Jones; Julie Fox; Marvel Cartershaw, Mary Janice Williamson; Mary Kuziak; Melissa Berrien; Melissa Oliver; Melissa Phillips; Monica Stepney; Monique Mewborn; Paul Simmons; Penny Barton; Priscilla Smith; Raul Hernandez; Rebecca Fisher; Sandy Staheli; Shannon Serio; Sheila Stockslader; Straudie Bryant; Tameca Dunning; Tiffinie Green; Torsha Hawkins; Yamiled Ortiz, Yvette Ciurca |
| **Subject:** | missing your pager? |

waste of time

poor mamt

it might be in my office

what ?

Kathy Murphy

*Statement of Confidentiality - This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.*

**Monica** Stepney

**From:** Kathleen Murphy
**Sent:** Wednesday, January 06, 2016 2:22 PM
**To:** LeasingOps Internal Staff
**Subject:** this afternoon

the management team is in a meeting for the rest of the afternoon offsite. Please handle any issues, or defer until
tomorrow.     ⟶ *all* of *them*
You may be able to reach your manager via email if you need an immediate answer.

Kathy Murphy

*Statement of Confidentiality  - This electronic message may contain privileged or confidential information. If you are not
the intended recipient of this e-mail, please delete it from your system and advise the sender.*

1

## Monica Stepney

**From:** Kathleen Murphy
**Sent:** Monday, December 21, 2015 3:03 PM
**To:** Monica Stepney; Shanna Cranmer
**Subject:** RE: PBV EID

Monica, I believe I confused the EID with zero HAP. PBV are now eligible for the zero HAP waiting period. I cannot find any changes in the regulations regarding EID.. Sorry about the confusion.

**From:** Monica Stepney
**Sent:** Monday, December 21, 2015 2:46 PM
**To:** Kathleen Murphy; Shanna Cranmer
**Subject:** PBV EID

Hello,

I am still waiting to hear if the EID disregard will now be for PBV tenants. Just to recap, I asked a couple weeks ago and you stated the PIH notice changed a few months ago to include these tenants. I now have 3 tenants whose income may change because of this. Please let me know so I can make the changes effective 2-1. Thank you.

*Monica Stepney*
*Housing Specialist*
*Special Programs/PBV- Leasing Operations*
*585-697-6111*
*585-362-8611 - fax*
*mstepney@rochesterhousing.org*

**Statement of Confidentiality**
This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

**Monica** Stepney

| | |
|---|---|
| **From:** | Kathleen Murphy |
| **Sent:** | Monday, December 14, 2015 8:57 AM |
| **To:** | LeasingOps Internal Staff |
| **Subject:** | paper |

Please......... if you are filling a paper drawer and there is left over paper.........please don't leave it on the counter!  Find an emptier drawer in the copier and fill that one too.  It takes 3 seconds ( I counted) and doesn't leave a mess behind for someone else to clean up after you.

Con descending = poor mgmt

Kathy Murphy

*Statement of Confidentiality  - This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.*