UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MONICA STEPNEY

                Plaintiff,

v.

ROCHESTER HOUSING AUTHORITY,
JACKIE MILNE, NICOLE ALLEN, SANDY
WHITNEY, and DAN STURGIS,

                Defendants.

Case # 16-CV-6173-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Monica Stepney ("Plaintiff") brings this employment discrimination claim against Defendants Rochester Housing Authority ("RHA"), Jackie Milne, Nicole Allen, Sandy Whitney, and Dan Sturgis under Title VII of the Civil Rights Act of 1964. On March 17, 2016, Plaintiff moved for leave to proceed *in forma pauperis* ("IFP"). ECF No. 2. On June 13, 2017, Plaintiff again moved for leave to proceed IFP. ECF No. 6. On November 26, 2017, the Court granted Plaintiff's IFP motion and directed the U.S. Marshals Service to serve Defendants. ECF No. 8. On November 7, 2017, RHA, Nicole Allen, and Sandy Whitney moved to dismiss the Complaint. ECF No. 15. On December 22, 2017, Jackie Milne also moved to dismiss the Complaint. ECF No. 18. Finally, on January 16, 2018, Plaintiff responded to RHA, Sandy Whitney, and Nicole Allen's Motion to Dismiss by seeking to add additional facts and defendants to her suit. ECF No. 21. For the reasons stated below, RHA, Nicole Allen, and Sandy Whitney's Motion to Dismiss is GRANTED in part and DENIED in part. Defendant Jackie Milne's Motion to Dismiss is

GRANTED. The claim against Dan Sturgis is DISMISSED *sua sponte*. Lastly, Plaintiff's Motion to Supplement is DENIED.

## BACKGROUND[1]

Plaintiff began working for RHA, a Section 8 and public housing agency, as a housing specialist in 2006. She alleges that Defendants—the RHA and various coworkers there— "worked in conjunction together for the common and sole purpose to go after [her]self and others that are biased against due to race, etc. All scenarios overlap because of this and how they collectively agree to target people." ECF No. 1 at 5. Specifically, Plaintiff seems to allege that white employees were allowed to come to work late and leave early while she and other black workers were discouraged from doing so. Additionally, Plaintiff's emails indicate that she was singled out for using Facebook at work, while other employees were allowed to use Facebook and play golf in the hallway during work hours. White managers also insulted her and other black workers. Plaintiff's submissions also include emails wherein she alleges that she was treated differently than white employees. For instance, in March 2013, Plaintiff alleged to another coworker in an email that she was inadequately trained, and that she was forced to take a training test that the person she trained with did not have to take. ECF No. 3 at 22.

In December 2014, Plaintiff joined other black employees in writing an anonymous letter to the RHA's Board of Directors that disclosed racist incidents at RHA. In response to the letter, RHA's Interim Executive Director Shawn Burr hired an outside investigative services consultant to perform an internal investigation. In December 2015, Burr sent an all-staff email to RHA stating

---

[1] The following allegations are taken from Plaintiff's Complaint (ECF No. 1) and attached exhibits (ECF Nos. 1-2, 1-2, 1-7, 3) unless otherwise noted. Although Plaintiff's Complaint and exhibits are very difficult to comprehend, as they largely consist of disorganized emails that lack explanation and contextual detail, the Court must construe a *pro se* litigant's submissions liberally and interpret them to raise the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

that the outside investigator recommended that RHA draft and adopt a diversity and inclusion policy and increase the diversity of RHA's management. In January 2016, Defendant Jackie Milne, then RHA Director of Human Resources, was placed on administrative leave and terminated for cause. Although Plaintiff's submissions are not entirely clear on this point, she seems to suggest that Defendants retaliated against her for her role in the anonymous letter and for otherwise complaining about racial discrimination. She also alleges that she was "retaliated against by Dan Sturgis and Nicole Allen due to push back [she] was giving after being forced to do the work of a favored white employee." ECF No. 3 at 4.

On January 9, 2015, Plaintiff filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). The Court does not know the specific allegations that Plaintiff filed with the EEOC, because Plaintiff did not submit a copy of the charge, but Plaintiff did submit the Dismissal and Notice of Right to Sue form the EEOC sent her. *See* ECF No. 1 at 8. The letter stated that, while Plaintiff had a "good initial case for hostile work environment," ultimately, her claims were not "severe or persuasive and it's hard to identify race as a basis of the harassment." *Id.* Additionally, some of Plaintiff's "complaints of discrimination seem[ed] frivolous." *Id.* The investigator found even less evidence of violations based on harassment, retaliation, or a pattern or practice of discrimination. *Id.* Based these findings, the EEOC was "unable to conclude that the information obtained establishe[d] violations of" Title VII. *Id.* at 10. Plaintiff alleges that the EEOC "got it wrong" and that her case is "far from frivolous." ECF No. 3 at 4.[2]

In August 2016, John Hill became RHA's new executive director, Rashondra Martin became the new head of RHA's Human Resources department, and Cynthia Herriott filled the

---

[2] Curiously, in a letter to the Court, Plaintiff argues that the "EEOC agreed RHA is indeed a Hostile Work Environment," ECF No. at 2, which is not true.

newly-created Compliance, Diversity, and Inclusion Officer position. *See* Press Release, RHA, Rochester Housing Authority Appoints Executive Director and Strategic Leadership Team (Aug. 10, 2016).[3] Plaintiff alleges that Martin and Herriott, along with other RHA employees Pierre Dorancy, Shawanna Lawrence, and Melissa Santiago "obtained confidential information" that Plaintiff "was a whistleblower who reported them to HUD, OIG, and the FBI after learning of the fraudulent activities that were going on between Executive Management and RHA." ECF No. 21 at 1. According to Plaintiff, the abovementioned "new people, all black except 1 or 2, came in and started hiring their relatives, abusing the RHA credit card, overlooking conflict of interests again and again, firing the whites and calling them token whites while making them fear for their jobs." *Id.* Additionally, Plaintiff claims "proof of fraud, collusion, mismanagement of government funds, embezzlement" and that the "new regime has been 'lining their pockets' and using RHA as their own personal bank." *Id.* at 4. Plaintiff and some of her coworkers "contemplated filing a class action lawsuit" related to these allegations. *Id.* According to Plaintiff, when "Rashondra Martin and company got wind of" the potential lawsuit and Plaintiff's whistleblowing to various federal agencies, they "set out to harass [her], retaliate against [her]" and "ultimately have [her] fired." *Id.*

On June 13, 2017, Plaintiff was fired from RHA. ECF No. 5. Paperwork from RHA documenting the reasons for Plaintiff's termination, which she submitted to the Court, indicate that Plaintiff violated the RHA attendance policy by missing 36% of her working days and calling in her absences at the last minute, making it difficult to find a coworker to cover her appointments with the tenants who RHA served. ECF No. 7 at 3. Additionally, the RHA report states that Plaintiff had not met minimum benchmarks for her job. *Id.* Finally, the form states that Plaintiff abused RHA's computer policy in several ways. *Id.* First, she used her work email address for

---

[3] *See Moody v. Allergan USA, Inc.*, 16-CV-901v(Sr), 2017 WL 6949742, at *2 (W.D.N.Y. Dec. 5, 2017) ("A district court may take judicial notice of public documents issued by government agencies . . .")

personal accounts. Additionally, over "the course of the previous 90 days," Plaintiff "spent approximately 64.8 hours using the Internet for personal use." *Id.* According to the report, the "most visited site categories include wedding/event planning, personal finances, personal research, research of [] fellow RHA staff, social media, video streaming, news, gambling, job hunting, home hunting, chatrooms and shopping." *Id.*

Plaintiff in turn described RHA's report as "a retaliatory measure and witch hunt with alternative facts," and alleges that Rashondra Martin fabricated the report. ECF No. 21 at 9, 11. She also suggested in a letter to the New York State Unemployment Office that "[p]art of [her] job was to look on the [I]nternet while helping participants with housing issues and sometime[s] a lot of spam would get through if the system was having issues." ECF No. 21 at 11. She also complains that Martin had staff member Melissa Santiago cancel her health insurance immediately in an attempt to "stop [Plaintiff] from picking up [her] medication" and prevent her from visiting her doctors. *Id.*

## DISCUSSION

**I.     RHA, Nicole Allen, and Sandy Whitney's Motion to Dismiss**

    **A.     Timely Service**

Defendants RHA, Nicole Allen, and Sandy Whitney move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(5), which provides for dismissal of a claim if service of process was not timely made in accordance with Rule 4(m). *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Rule 4(m) requires plaintiffs to serve defendants within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). A defendant's objection to service "must be specific and must point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized." *Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 312 (S.D.N.Y. 2008).

Defendants argue that Plaintiff's Complaint must be dismissed because she never attempted to serve the Summons and Complaint on the Defendants herself, and that only "recently did the Court order the U.S. Marshals Service to effectuate service of the summons and complaint on the Defendants, which it did on October 13, 2017, *nearly nineteen months* since the date the Complaint was filed" and well outside Rule 4(m)'s 90-day limit. ECF No. 15-3 at 3-4 (emphasis in original).

Defendants' argument[4] overlooks the interplay between service and the IFP application process. When Plaintiff filed her Complaint, she also filed an IFP motion, which she updated and resent after she was fired from her job. The Clerk of Court "cannot issue Summonses until the IFP application has been determined." *Chinn v. Elmwood Franklin Sch.*, No. 15-CV-938-FPG, 2017 U.S. Dist. LEXIS 161144, at *9 (W.D.N.Y. Sept. 28, 2017) (citing 28 U.S.C. § 1915(a)(1) (stating that the Court may authorize the commencement of any suit by a person unable to pay the filing fee)). In other words, "there is nothing to be served" until the Court has granted the IFP application. *Id.* Consequently, "the [90-day] period is tolled while the *in forma pauperis* application is pending." *See Gonzalez v. L'Oreal USA, Inc.*, 489 F. Supp. 2d 181, 184 (N.D.N.Y. 2007) (citing *Sidney v. Wilson*, 228 F.R.D. 517, 523 (S.D.N.Y. 2005)). Given that Plaintiff's IFP application tolled Rule 4(m)'s 90-day period, her service of Defendants RHA, Nicole Allen, and Sandy Whitney was timely. Additionally, contrary to what Defendants imply in their Motion to Dismiss, Plaintiff's reliance on the U.S. Marshals Service to serve the Complaint was appropriate. *Gonzalez*, 489 F. Supp. 2d at 184 ("[P]laintiffs proceeding *in forma pauperis* are entitled to rely upon the United States Marshal to effect service . . .").

---

[4] Plaintiff has not addressed the reason for the delay in serving Defendants. Although Plaintiff "bears the burden of proving the adequacy of service once it has been challenged, the Court may take judicial notice of facts contained in the record in adjudicating a motion to dismiss." *Sidney v. Wilson*, 228 F.R.D. 517, 522 (S.D.N.Y. 2005).

### B. No Individual Liability Under Title VII

Defendants correctly argue that Plaintiff's Title VII claims against Sandy Whitney and Nicole Allen must be dismissed because there is no individual liability under the statute. *See* ECF No. 15-3 at 17. Indeed, it is well-settled that "Title VII does not impose liability on individuals." *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Accordingly, Plaintiff's claims against Whitney and Allen are DISMISSED. Her claim against RHA still stands, because RHA is considered an "employer" and thus subject to liability under the law. *See* 42 U.S.C. §2000e-2(a)(b).

## II. Jackie Milne's Motion to Dismiss

Jackie Milne moves to dismiss on two grounds. First, she argues that proper service of process has not occurred under Rule 4(e) because a "copy of the Summons and Complaint was hand delivered to the receptionist at [her] current employment," and she has "not authorized [her] employer's receptionist to accept service of process on [her] behalf." ECF No. 18 at 2. Rule 4(e), however, allows plaintiffs to follow "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," Fed. R. Civ. P. 4(e), and New York state law explicitly allows plaintiffs to serve by "delivering the summons within the state to a person of suitable age or discretion at the actual place of business . . . of the person to be served." N.Y.C.P.L.R. § 308(2); *see also Diamond D Constr. Corp. v. N.Y. State Dep't. of Labor*, 00-CV-335C(F), 2004 WL 1877720, at *15 (W.D.N.Y. Aug. 20, 2004). It is not evident to the Court why Milne's receptionist would not be of "suitable age or discretion," and Milne concedes that service occurred at her place of employment. Service was therefore proper under the Federal Rules of Civil Procedure.

However, Milne's second argument for dismissal—that there is no individual liability under Title VII—is meritorious for the same reasons discussed in the section pertaining to Whitney and Allen. Plaintiff's claim against Milne is therefore DISMISSED.

### III. Dismissal of the Claim Against Dan Sturgis

Dan Sturgis has not moved to dismiss the Complaint, but unusual factors compel the Court to dismiss the claim against him *sua sponte*. Although the U.S. Marshals Service twice attempted to serve Dan Sturgis, his summons was returned unexecuted after both attempts. ECF Nos. 16, 20. The most recent process receipt indicates that Sturgis was terminated from RHA in 2009, approximately seven years before Plaintiff filed her Complaint in March 2016. ECF No. 20. Plaintiff has not attempted to serve Sturgis since the U.S. Marshals Service's second unsuccessful attempt to serve Sturgis in December 2017. While a *pro se* plaintiff may rely on the Marshals Service to serve defendants, "that reliance is not absolute; plaintiffs always retain the obligation to provide the process servers with the necessary information and to generally make diligent efforts." *Gonzalez*, 489 F. Supp. 2d at 184. There is no indication that Plaintiff has made any effort whatsoever to locate Sturgis, and it has been more than 360 days since this Court granted Plaintiff's IFP application—well over Rule 4(m)'s 90-day period for service. *See* ECF No. 8. Because "the procedural requirement of service of summons [has not been] satisfied" as to Sturgis, the Court lacks personal jurisdiction over him. *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006). Accordingly, the Complaint against Sturgis is subject to dismissal under Rule 12(b)(5).

The Court is aware that dismissing a claim *sua sponte* without giving prior notice to a plaintiff is only "appropriate in some circumstances." *Perez v. Ortiz*, 849 F.2d 793, 797-98 (2d Cir. 1998). However, exceptional circumstances exist in this case. The Second Circuit and other

circuit courts have explained that *sua sponte* dismissal without notice is appropriate if it is "unmistakably clear that the court lacks jurisdiction," *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999), or if notice "can only lead to a waste of judicial resources." *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726-37 (D.C. Cir. 1990). Both of these descriptions apply to the instant litigation against Sturgis. First, as explained above, the Court clearly lacks personal jurisdiction over Sturgis since he has not been properly served. Secondly, even if Plaintiff properly served Sturgis and the Court could exercise personal jurisdiction over him, he cannot be held individually liable for any Title VII violation. Although the Court cannot dismiss the claim against Sturgis under Rule 12(b)(6) because it does not have personal jurisdiction over him, *see Arrowsmith v. United Press Intern.*, 320 F.2d 219, 221 ("[A] court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim . . ."), the inevitable futility of Plaintiff's Title VII claim against Sturgis—and the waste of resources that pursuing the meritless claim would entail—further justify the Court's *sua sponte* dismissal of the claim. Plaintiff's claim against Sturgis is accordingly DISMISSED.

## IV. Plaintiff's Motion to Amend/Correct Complaint

In response to RHA, Nicole Allen, and Sandy Whitney's Motion to Dismiss, Plaintiff wrote a letter to the Court declaring that she was adding additional defendants Rashondra Martin, Pierre Dorancy, Cynthia Herriott, Shawanna Lawrence, and Melissa Santiago to her lawsuit. ECF No. 21 at 1. Attached to her letter is a copy of a complaint that she filed with the Monroe County Supreme Court. *Id.* at 2-8. The crux of Plaintiff's state lawsuit against the abovementioned prospective new defendants is that "they obtained confidential information that [Plaintiff] was a whistleblower who reported them to HUD, OIG and the FBI after learning of the fraudulent activities that were going on between Executive Management and RHA" and that she was fired in retaliation for her

whistleblowing. *Id.* at 1. Among the claims Plaintiff raises in the state lawsuit are violations of "the Whistleblower Act . . . intimidation, workplace bullying . . . incompetence, negligence, intentional infliction of emotional distress/duress, unfair employment practices, slander and libel, [and] malicious intent to cause undue stress . . ." *Id.* at 4. Instead of "going through with the case already filed in Supreme Court," Plaintiff seeks to add these new defendants, and presumably the new claims, to her federal lawsuit. *Id.* at 1.

Although the Clerk of Court labeled Plaintiff's letter a "Motion to Amend/Correct," Plaintiff's letter is more properly construed as a supplemental pleading[5] and not an amended pleading because it asserts new causes of actions related to her firing—an "event that happened after the date of pleading." *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."); Wright et al., 6 Fed. Prac. & Proc. Civ. § 1473 (3d ed.) (noting that "an amended pleading . . . only should relate to matters that have taken place prior to the date of the earlier pleading" and that "the distinction between an amended and a supplemental pleading is [frequently] confused" by courts and parties).

The substance of Plaintiff's proposed supplemental complaint—that Rashondra Martin fired her in retaliation for whistleblowing—is predicated on New York's Whistleblower Act, a state law. *See* N.Y. Labor Law § 740. Therefore, there is "no independent basis of federal jurisdiction" for this cause of action, and any "[j]urisdiction, if it exists at all is of a pendent nature

---

[5] Many of Defendants RHA, Sandy Whitney, and Nicole Allen's arguments in response to Plaintiff's letter would be more relevant if Plaintiff had sought to amend—rather than supplement—her complaint. Furthermore, some of the decisions that Defendants cite confuse the distinction between amending and supplementing or ignore the obligation to liberally construe *pro se* pleadings.

10

and its exercise lies within the discretion of the court." *Corum v. Beth Israel Med. Ctr.*, 359 F. Supp. 909, 915 (S.D.N.Y. 1973).

The U.S. Supreme Court explained the doctrine of pendent jurisdiction in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).[6] According to the Court in *Gibbs*, justification for the doctrine of pendent jurisdiction lies "in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims," as needless "decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for a surer-footed reading of applicable law." *Id* at 726. Accordingly, pendent jurisdiction exists only when there is a claim "arising under [the] Constitution, [and] the Laws of the United States," and the "relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." *Id.* at 725. Stated differently, the state and "federal claims must derive from a common nucleus of operative fact" for pendant jurisdiction to exist. *Id.*

Here, Plaintiff's two claims—one for discrimination that is the basis of her 2015 EEOC right-to-sue letter and one for whistleblower retaliation that is the subject of her Monroe County Supreme Court case—derive from "entirely different factual contexts," *Corum*, 359 F. Supp. at 916, and thus cannot be considered as deriving from a "common nucleus of operative fact," *Gibbs*, 383 U.S. at 725. Indeed, the primary target of her state complaint, Rashondra Martin, was not even working for RHA when Plaintiff filed her EEOC charge in 2015 and thus had no involvement in the facts comprising Plaintiff's Complaint in this action. The Court therefore lacks pendent jurisdiction over Plaintiff's proposed supplemental complaint.

---

[6] Congress essentially codified the doctrine of pendent, or supplemental, jurisdiction in 28 U.S.C. § 1367.

Jurisdictional issues aside, courts may also decline to permit supplemental pleadings if the new claims are not adequately "related to the originally stated claims," *Webster v. Himmelbach*, 271 F. Supp. 3d 458, 472 (W.D.N.Y. 2017); Wright et al., 6 Fed. Prac. & Proc. Civ. §§ 1510 and 1506 (3d ed.) (explaining that courts have denied supplemental pleadings when "the claim or defense asserted in the supplemental pleading bore little or no relationship to the original pleading" and that "refusal to allow the supplemental pleading is entirely justified when" the new "matters alleged have no relation to the" original claim). Additionally, courts may deny supplemental pleadings that would not "promote the economic and speedy disposition of the entire controversy between the parties." Wright et al., 6 Fed. Prac. & Proc. Civ. § 1504; *Sai v. Transp. Sec. Admin.*, 155 F. Supp. 3d 1 (D.D.C. 2016). Plaintiff's attempt to supplement her complaint invokes both of these concerns. First, there is no relationship between the alleged racial discrimination detailed in Plaintiff's Complaint and the alleged retaliation for whistleblowing that is the subject of Plaintiff's supplemental complaint. Second, it appears to the Court that adding an unrelated whistleblower retaliation claim would only further complicate and confuse the instant litigation between the parties, rather than promote its speedy disposition. Accordingly, Plaintiff's motion to supplement is also denied for these reasons.

## CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (ECF No. 15) is DENIED as to RHA and GRANTED as to Nicole Allen and Sandy Whitney. Jackie Milne's Motion to Dismiss (ECF No. 18) is GRANTED. Additionally, the claim against Dan Sturgis is DISMISSED. Finally, Plaintiff's Motion to Supplement, filed as a "Motion to Amend/Correct," (ECF No. 21) is DENIED. The Clerk of Court is directed to terminate Defendants Nicole Allen, Sandy Whitney, Jackie Milne, and Dan Sturgis as parties to this action.

By separate order, this case will be referred to a United States Magistrate Judge for pretrial proceedings. Defendant RHA must serve its answer to Plaintiff's complaint by July 9, 2018. Fed. R. Civ. P. 12(a)(4)(A).

IT IS SO ORDERED.

Dated: June 25, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court